Margaret Kelly MICHAELS, Plaintiff,

v.

STATE OF NEW JERSEY, Attorney General's Office, County of Essex, Essex County Prosecutor's Office, George L. Schneider, Esq., Herbert Tate, Esq., John Mastroangelo, John Noonan, Glenn Goldberg, Esq., Sarah Sencer–McArdle, Eileen C. Treacy, M.A., Essex County Police Department, Newark Police Department, Division of Youth and Family Services, Louis Fonnelaras, Susan Esquillan, et al., Defendants.

Civil Action No. 96–3557 (MTB).

United States District Court,
D. New Jersey.

Nov. 8, 1996.

Louis J. Santore, Santore & Kenny, Secaucus, NJ, for Margaret Kelly Michaels.

Paul E. Stevenson, Division of Law, Newark, NJ, for State of New Jersey, Attorney General's Office.

Michael R. Griffinger, Crummy Deldeo Dolan Griffinger & Vecchione, Newark, NJ, for County of Essex.

David N. Samson, Wolff & Samson, P.C., Roseland, NJ, for Essex County Prosecutor, George L. Schneider, Herbert Tate, Sarah Spencer–McArdle, Div. of Youth and Family Services, Louis Fonnelaras.

Gage Andretta, Wolff & Samson, PC, Roseland, NJ, for Glenn Goldberg.

John R. Gonzo, Harwood Lloyd, Hackensack, NJ, for Eileen C. Treacy, M.A.

Steven C. Mannion, Michelle Hollar–Gregory, Corporation Counsel, Newark, NJ, for Newark Police Department.

## OPINION

BARRY, District Judge.

The City of Newark, on behalf of defendant Newark Police Department ("Newark"),[1] moves to remand this action to state court or, alternatively, to dismiss the complaint of plaintiff Margaret Kelly Michaels as time-barred under the applicable statutes of limitations, for failure to comply with certain provisions of the New Jersey Tort Claims Act, and for failure to state a claim upon which relief can be granted. For the reasons that follow, Newark's motion will be granted in part and denied in part, and the complaint will be dismissed as to Newark.

### I. Introduction

This litigation arises out of the alleged unconstitutional prosecution and conviction of a nursery school teacher for bizarre acts of sexual abuse against many of the children for whom she was responsible.[2] In September 1984, the Wee Care Nursery School ("Wee Care") hired Michaels ("Michaels" or "plaintiff"), then a twenty-two year old college student, as a teachers' aide for preschoolers. Approximately one month later, Michaels be-

---

1. Plaintiff has improperly designated the Newark Police Department as a defendant in this case. The Newark Police Department is no more than a department within the City of Newark, and lacks a separate legal existence. Because plaintiff may cure this improper designation by amending her complaint to name the City of Newark as the proper party, the court will entertain the motion made by the City of Newark, and will treat the City of Newark as the proper party for purposes of this motion.

2. For a summary of the criminal proceedings, *see State v. Michaels*, 136 N.J. 299, 642 A.2d 1372 (1994) and *State v. Michaels*, 264 N.J.Super. 579, 625 A.2d 489 (App.Div.1993).

came a teacher at Wee Care, a position she held until April 26, 1985.

Located in Maplewood, New Jersey, Wee Care served approximately fifty families, with enrollment of about sixty children, ages three to five. During the eight-month period that Michaels worked at Wee Care, parents began to observe behavioral changes in their children. *Michaels*, 136 N.J. at 304, 642 A.2d 1372. One such parent, after hearing from her son about certain incidents regarding Michaels, alerted the New Jersey Division of Youth and Family Services ("DYFS"). *Id.* at 304–05, 642 A.2d 1372. Having been apprised by DYFS on May 1, 1985 of the information the mother had relayed, the Essex County Prosecutor's Office commenced an investigation of possible sexual abuse at Wee Care. *Id.* at 305, 642 A.2d 1372.

As a result of its investigation, the Essex County Prosecutor's Office arrested Michaels on June 12, 1985, on charges of what plaintiff describes as "child molestation." Complaint, Count One at ¶ 22. After a trial in the Superior Court of New Jersey, which commenced on June 22, 1987 and concluded on April 15, 1988, a jury convicted Michaels of 115 counts of aggravated sexual assault, sexual assault, endangering the welfare of children, and terroristic threats. *Michaels*, 136 N.J. at 305–06, 642 A.2d 1372. On August 2, 1988, the trial court sentenced Michaels to an aggregate term of forty-seven years imprisonment with fourteen years of parole eligibility. *Id.* at 306, 642 A.2d 1372.

On March 26, 1993, the Appellate Division of the Superior Court reversed the conviction and remanded the criminal proceedings for a new trial, concluding that the prosecution's interviews and interrogations of the allegedly abused children were highly improper. *Michaels*, 264 N.J.Super. at 629–32, 625 A.2d 489. The Appellate Division ordered that, in the event the prosecution decided to retry the case, a pretrial hearing would be necessary to determine whether the statements and testimony of those children should be excluded from evidence as untrustworthy. *Id.* at 631–32, 625 A.2d 489.

On June 23, 1994, after granting certification on the limited issue of the pretrial hearing, the Supreme Court of New Jersey af-

firmed the Appellate Division's reversal and remand, and required the prosecution, in the event of a retrial, to prove the reliability of the children's statements by "clear and convincing" evidence:

> [W]e find that the interrogations that occurred in this case were improper and there is a substantial likelihood that the evidence derived from them is unreliable. We therefore hold that in the event the State seeks to re-prosecute this defendant, a pretrial hearing must be held in which the State must prove by clear and convincing evidence that the statements and testimony elicited by the improper interview techniques nonetheless retains a sufficient degree of reliability to warrant admission at trial. Given the egregious prosecutorial abuses evidenced in this record, the challenge that the State faces is formidable. If the statements and proffered testimony of any of the children survive the pretrial hearing, the jury will have to determine the credibility and probative worth of such testimony in light of all the surrounding circumstances.

*Michaels*, 136 N.J. at 324, 642 A.2d 1372.

The decision was subsequently made not to retry Michaels and, on December 1, 1994, all criminal charges against her were formally dismissed. Complaint, Count One at ¶ 25.

On February 27, 1995, Michaels filed a notice of tort claim with each of the named defendants in this case pursuant to the New Jersey Tort Claims Act, N.J.S.A. 59:8–1 *et seq.* Certification of Steven C. Mannion ("Mannion Cere."), ¶ 5 and Exhibit B. Michaels filed the instant complaint in the Superior Court on June 13, 1996, and served defendants on June 25, 1996. On July 25, 1996, defendants the Essex County Prosecutor's Office, Glenn Goldberg, Herbert Tate, George L. Schneider, Sarah Sencer–McArdle, and John Mastroangelo, apparently with the "consent" of all the other defendants with the exception of Newark, removed the action to this court.

Newark now moves to remand because it did not join in the removal petition as required by 28 U.S.C. § 1446 and because the allegedly consenting defendants did not prop-

erly join in the removal by way of a writing. Alternatively, Newark moves to dismiss the complaint as time-barred pursuant to the applicable statutes of limitations, for failure to comply with certain mandatory provisions of the New Jersey Tort Claims Act, and for failure to state a claim upon which relief can be granted.

## II. *Discussion*

### A. *Newark's Motion to Remand*

The federal removal statute provides that a "defendant or defendants" desiring to remove a state court action to federal court shall file in the federal district court a notice of removal within thirty days after receipt by the removing defendant of the initial pleading or service of summons. 28 U.S.C. § 1446(a) and (b). Notwithstanding the ambiguity of the requirements a "defendant or defendants" must satisfy under this statute, it is a well-settled rule of law—commonly known as the "rule of unanimity"—that all defendants must join in or consent to the removal petition. *Gableman v. Peoria, Decatur and Evansville Railway Co.*, 179 U.S. 335, 337, 21 S.Ct. 171, 172, 45 L.Ed. 220 (1900); *Chicago, Rock Island and Pacific Railway Co. v. Martin*, 178 U.S. 245, 248, 20 S.Ct. 854, 855, 44 L.Ed. 1055 (1900); *Balazik v. County of Dauphin*, 44 F.3d 209, 213 (3d Cir.1995) (citations omitted); *Lewis v. Rego Co.*, 757 F.2d 66, 68 (3d Cir.1985) (citing *Northern Illinois Gas Co. v. Airco Indus. Gases*, 676 F.2d 270 (7th Cir.1982)); *Ogletree v. Barnes*, 851 F.Supp. 184, 186 (E.D.Pa. 1994) (removal perfected when all defendants join in or otherwise consent to the removal petition); *Stangard Dickerson Corp. v. United Electrical, Radio & Machine Workers of America, Local 1218*, 33 F.Supp. 449, 451 (D.N.J.1940) (removal valid when one defendant signed removal petition and remaining defendants filed separate paper consenting to the petition).

The two principal issues raised in Newark's motion to remand are: (1) whether an exception to the "rule of unanimity" exists that would excuse a defendant's failure to join in or consent to the removal petition; and (2) whether the removing defendants in a multiple-defendant case must memorialize or evidence their joinder or consent in writing.

### 1. *"Nominal Party" Exception To The "Rule Of Unanimity"*

The Court of Appeals for the Third Circuit has held that the "unanimity rule" may be disregarded where: (1) a non-joining defendant is an unknown or nominal party; (2) a defendant has been fraudulently joined; or (3) a non-resident defendant has not been served at the time the removing defendants filed their petition. *Balazik*, 44 F.3d at 213, n. 4 (citations omitted).

At least as currently pled, Newark is a nominal party to this lawsuit. The claims asserted, and the facts alleged, in the complaint are limited to the investigation and prosecution of Michaels by the Essex County Prosecutor's Office for her alleged involvement in the sexual abuse of children while working at Wee Care. The complaint contains no allegations, nor can it reasonably be inferred, that this investigation and prosecution was conducted by or had any connection with Newark. Indeed, not a single individual defendant named in the complaint—not even one of the one-hundred fictitious defendants—is alleged to have had any such connection.

The only allegation in the entire complaint having anything to do with Newark is contained in Count Three, which provides, in pertinent part, as follows:

2. The defendants State of New Jersey, Attorney General, Newark Police Department, County of Essex, Essex County Prosecutor and Division of Youth and Family Services were responsible for the training and supervision of employees and other personnel in the use of proper investigative techniques, involving children and other witnesses or victims.

4. The defendants and each of them were negligent in that they failed to adequately and properly train and supervise employees and other personnel involved in the investigation and prosecution of Margaret Kelly Michaels.

Complaint, Count Three, ¶¶ 2 and 4.

While certainly Newark is responsible for training its own employees, there is no alle-

gation that any employee of Newark participated in the investigation or prosecution of plaintiff or that Newark trained or supervised anyone who was so involved. Because no allegation links Newark with any activities that form the basis of plaintiff's claims for relief, there is no reasonable basis for predicting that Newark will be held liable to plaintiff. Consequently, and separate and apart from plaintiff's failure to state a claim against Newark, *see* Point B. 3. *infra,* Newark must be deemed a nominal party for removal purposes. *See Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 369 (7th Cir.1993) (a defendant having "no connection" to tortious conduct alleged in complaint, and "engag[ing] in no independent alleged wrongdoing," held to be a nominal party for removal purposes); *Farias v. Bexar County Board of Trustees,* 925 F.2d 866, 872 (5th Cir.) (non-removing defendants deemed nominal parties where "plaintiff could in no way establish a cause of action" against them), *cere. denied,* 502 U.S. 866, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991).

### 2. *Writing Required to Memorialize Joinder in or Consent to the Removal Petition*

■ The removal petition, which was signed only by counsel representing the Essex County Prosecutor's Office, Glenn Goldberg, Herbert Tate, George L. Schneider, Sarah Sencer–McArdle, and John Mastroangelo (referred to collectively as either the "signing defendants" or, along with the "non-signing defendants," [3] as the "removing defendants") stated as follows:

> 5. Defendants the State of New Jersey, the Attorney General's Office, the Division of Youth and Family Services, the County of Essex, and the Essex County Police Department *have consented* to the removal of the State Court Action to this Court.

Removal Petition, ¶ 5 (emphasis supplied). Newark contends that the reference in the petition to the non-signing defendants' consent, without more, is insufficient to satisfy the "rule of unanimity" under 28 U.S.C. § 1446(a). The removing defendants disagree, arguing that such a representation of consent satisfies their statutory obligation.

Although no case in this district has addressed this precise issue, there is some limited support for the removing defendants' position. *See, e.g., Chrysler First Financial Services Corp. v. Greenfield,* 753 F.Supp. 939, 941 (S.D.Fla.1991) (remanding the action because "[t]he other defendants ... have not joined in the United States' petition for removal, nor has the United States indicated on the face of the removal petition whether the remaining defendants agree to removal"); *Jasper v. Wal–Mart Stores, Inc.,* 732 F.Supp. 104, 105 (M.D.Fla.1990) (holding that "the petition must be signed by all defendants or the signer must allege consent of all defendants"); *Mechanical Rubber & Supply Co. v. American Saw & Manufacturing Co.,* 810 F.Supp. 986, 990 (C.D.Ill.1990) (denying remand motion where one defendant represented in the removal petition that the other defendant "joined in the removal," but required the signing defendant to obtain an affidavit from the non-signing defendant manifesting its assent to removal).

Most courts, however, have held that it is not enough for defendants who have not signed the removal petition to merely advise the removing defendant that they consent thereto, or for a removing defendant to represent such consent to the court on behalf of the other defendants. Rather, most courts require all defendants to voice their consent *directly to the court. Martin Oil Co. v. Philadelphia Life Insurance Co.,* 827 F.Supp. 1236, 1239 (N.D.W.Va.1993). *See also Getty Oil Corp. v. Insurance Co. of North America,* 841 F.2d 1254, 1262, n. 11 (5th Cir.1988) ("[W]hile it may be true that consent to removal is all that is required under section 1446, a defendant must do so itself"); *Landman v. Borough of Bristol,* 896 F.Supp. 406, 409 (E.D.Pa.1995) ("Unfortunately for both, one defendant's attempt to speak on behalf of another will not suffice") (citations omitted); *Creekmore v. Food Lion,*

---

**3.** The State of New Jersey, the Attorney General's Office, the Division of Youth and Family Services, the County of Essex, and the Essex County Police Department are otherwise referred to herein as the "non-signing defendants" or, along with the "signing defendants," as the "removing defendants."

*Inc.*, 797 F.Supp. 505, 509 (E.D.Va.1992) (although defendants "never objected to removal, proper removal does not depend on the absence of such objection"); *Fellhauer v. City of Geneva*, 673 F.Supp. 1445, 1447–48 (N.D.Ill.1987) (requiring all defendants to "communicate their consent to the court—not to one another"); *Mason v. International Business Machines, Inc.*, 543 F.Supp. 444, 445 (M.D.N.C.1982) (same).

While courts generally do not require all defendants to sign the removal petition itself, most courts have required some form of unambiguous *written* evidence of consent to the court in timely fashion. *See, e.g., Roe v. O'Donohue*, 38 F.3d 298, 301 (7th Cir.1994) ("To 'join' a motion means to support it in writing") (citations omitted); *Getty*, 841 F.2d at 1262, n. 11 ("This does not mean that each defendant must sign the original petition for removal, but there must be some timely filed written indication from each served defendant ... that it actually consented to such action"). Moreover, although relatively few courts have permitted defendants to voice their consent orally, even these courts have required that the oral consent be directed to the court, not merely among the defendants themselves. *See, e.g., Clyde v. National Data Corp.*, 609 F.Supp. 216, 218 (N.D.Ga. 1985); *Colin K. v. Schmidt*, 528 F.Supp. 355, 358 (D.R.I.1981).

The majority view reflects sound judicial policy. While requiring all defendants in a multiple-defendant case to sign the removal petition itself would be a senseless formalism, timely written evidence of joinder or consent from each defendant such as by filing its own notice of removal, an affidavit of joinder or consent, or even a letter provides the court with a written entry that would unequivocally bind the allegedly consenting defendants. On the other hand, "[t]o allow one party, through counsel, to bind or represent the position of other parties without their express consent to be so bound would have serious adverse repercussions, not only in removal situations, but in any incident of litigation." *Creekmore*, 797 F.Supp. at 509.

Furthermore, as explained by the court in *Martin Oil*, there is nothing unfair about this requirement.

Such a policy, while ensuring the unanimity of removal, does not prevent any defendant from taking full advantage of the removal statute, and it is not a requirement which could be manipulated by plaintiffs to overcome the rights of defendants to remove.

827 F.Supp. at 1238–39.

Accordingly, this court agrees with the majority position, and finds that the non-signing defendants did not properly join in or consent to the removal petition. While they may have communicated their consent to the signing defendants, they did not communicate their consent in any writing directed to the court. Their alleged consent is, therefore, legally insufficient.

■ The removing defendants argue that, notwithstanding this conclusion, they should be permitted to amend the removal petition and thereby cure the defect. It is uniformly recognized that a defect such as is seen here "is not deemed to be jurisdictional." *Balazik*, 44 F.3d at 213 (citing *Johnson v. Helmerich & Payne, Inc.*, 892 F.2d 422, 423 (5th Cir.1990) (holding that the "failure to join all the defendants in a removal petition is not a jurisdictional defect"); *In re Amoco Petroleum Additives Co.*, 964 F.2d 706, 713 (7th Cir.1992); *McGlinchey v. Hartford Accident and Indem. Co.*, 866 F.2d 651, 653 (3d Cir. 1989)). Rather, such defects are modal or formal, and can be waived. *Barnes v. Westinghouse Elec. Corp.*, 962 F.2d 513, 516 (5th Cir.), *reh'g denied*, 968 F.2d 18 (5th Cir.), *cert. denied*, 506 U.S. 999, 113 S.Ct. 600, 121 L.Ed.2d 536 (1992).

A limited number of courts have exercised their discretion to permit defendants to cure technical defects in removal petitions.[4] *See, e.g., Shaw*, 994 F.2d at 369 (because the defect "was justified," the court was "not willing to punish Dow Brands for what [was], after all, a technicality that [did not] go to the heart of jurisdiction"); *Eltman v. Pioneer Communications of America, Inc.*, 151

---

**4.** The Third Circuit expressly declined to decide whether a defective removal petition can be cured by an amendment more than thirty days after service. *Lewis*, 757 F.2d at 69, n. 2.

F.R.D. 311, 316 (N.D.Ill.1993) (even though the removal petition was "defective as a result of [defendant's] failure to join in," the defendant's "formal consent, untimely as it was, cure[d] the defect"); *Glover v. W.R. Grace & Co., Inc.,* 773 F.Supp. 964, 965 (E.D.Tex.1991) (denying motion to remand on ground that consent was four days late); *Hernandez v. Six Flags Magic Mountain, Inc.,* 688 F.Supp. 560, 562 (C.D.Cal.1988) (denying motion to remand on ground that consent was one day late). *Sicinski v. Reliance Funding Corp.,* 461 F.Supp. 649, 652 (S.D.N.Y.1978) (holding that affidavit submitted to the court after the plaintiff's motion to remand was sufficient to cure the defect in the removal petition).

Barring extraordinary circumstances, this court is not inclined to expand the thirty-day time limitation or permit amendments to a notice of removal after the thirty days have run. It is clear to the court; however, that extraordinary circumstances exist in this case. There is no published opinion by any court in this district that addresses the issue of whether a formal writing is necessary to satisfy removing defendants' joinder obligations under 28 U.S.C. § 1446 and the caselaw elsewhere—and the statute itself—do not provide unambiguous guidance. More importantly, the only party challenging the propriety of the removal is Newark, which, as a nominal party, lacks standing to do so. Logic dictates that if a nominal party lacks the power to object to its *own* failure to join in or consent to the removal, it similarly lacks the power to impugn the *other* defendants' failure to formally do so. Moreover, no other party, including plaintiff, has complained of any defect in the removal petition, and were any party to do so now, any such complaint would be treated as having been waived. *Allbritton Communications Co. v. National Labor Relations Board,* 766 F.2d 812, 820 (3d Cir.1985) (holding that "removal proceedings are in the nature of process, and defects in the removal procedures are waivable"), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 850, 88 L.Ed.2d 891 (1986).

As a result of Newark's status as a nominal party and the lack of any objection to the defect in the removal petition by any other party, this court does not believe that it is in the interest of justice to remand this matter to state court. Accordingly, the court will, in this limited instance, permit the non-signing defendants to cure the defect in the removal petition by filing a written document with the court consistent with this opinion.

## B. *Newark's Motion To Dismiss*

Having determined that remand is inappropriate, numerous issues remain for decision. Given the disposition that will ultimately be reached herein, *i.e.,* that the complaint fails to state a claim against Newark, all of the remaining issues need not be addressed. Those issues will be addressed and resolved, however, because resolving them now rather than later at the behest of another defendant will expedite this litigation as to the remaining parties. Moreover, if plaintiff were to amend her complaint to state a claim against Newark, *see* note *16, infra,* and this court has no great confidence that she can, those issues would have to be reached at that point. The court, therefore, will press on.

### 1. *Dismissal of Plaintiff's § 1983 Claim on Statute of Limitations Grounds*

Count Four alleges that the unconstitutional investigation, arrest, conviction, and incarceration of plaintiff violated 42 U.S.C. § 1983. Newark contends that this claim should be dismissed for various reasons, among them for the reason that it is time-barred.

A district court must apply the state limitations period applicable to personal injury actions in all matters brought pursuant to 42 U.S.C. § 1983. *Wilson v. Garcia,* 471 U.S. 261, 280, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985). Where a state has a statute of limitations for certain enumerated intentional torts as well as a residual statute for all other personal injury actions, the residual statute should be applied to § 1983 claims. *Owens v. Okure,* 488 U.S. 235, 249–50, 109 S.Ct. 573, 581–82, 102 L.Ed.2d 594 (1989). After analyzing New Jersey's statutes of limitations under the teachings of *Wilson* and *Owens,* the Court of Appeals for the Third Circuit held that § 1983 claims are governed by New

Jersey's two-year statute of limitations for personal injuries, N.J.S.A. 2A:14–2. *Cito v. Bridgewater Tp. Police Dept.*, 892 F.2d 23, 25 (3d Cir.1989).

It is not as clear, however, *when* the two-year statute of limitations begins to run, *i.e.*, when a cause of action under 42 U.S.C. § 1983 accrues under facts such as are now before the court. Did that cause of action accrue on (1) June 12, 1985, the date of plaintiff's arrest and the date plaintiff likely learned of the allegedly unconstitutional conduct, (2) March 26, 1993, the date of the Appellate Division's reversal and remand, (3) June 23, 1994, the date of the Supreme Court's affirmance of the reversal and remand, or (4) December 1, 1994, the date on which the charges against plaintiff were dismissed?

It is axiomatic, of course, that a statute of limitations begins to run when the cause of action accrues. Although the state limitations period must be applied, accrual of a cause of action under § 1983 is a question of federal law. *Albright v. Oliver*, 510 U.S. 266, 280, n. 6, 114 S.Ct. 807, 816 n. 6, 127 L.Ed.2d 114 (1994) (Ginsburg, J. concurring); *Board of Regents v. Tomanio*, 446 U.S. 478, 483–86, 100 S.Ct. 1790, 1794–96, 64 L.Ed.2d 440 (1980). Without any analysis of or reliance upon federal caselaw, plaintiff argues that her cause of action accrued on December 1, 1994,[5] the date on which the criminal charges against her were dismissed. In an argument equally bereft of analysis or legal support, Newark posits that plaintiff's § 1983 claim accrued on March 26, 1993, the date of the Appellate Division's decision.[6]

Both the Supreme Court of the United States and Court of Appeals for the Third Circuit have recently addressed the issue of when a § 1983 claim for an unconstitutional conviction or sentence accrues. *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *Smith v. Holtz*, 87 F.3d 108 (3d Cir.1996). After noting that the common law of torts "provide[s] the appropriate starting point for the inquiry," the Supreme Court observed that a § 1983 action for an unconstitutional conviction or sentence was most analogous to the common law tort of malicious prosecution. *Heck*, 512 U.S. at 482–85, 114 S.Ct. at 2370–71. A necessary element of a malicious prosecution claim, the court continued, is the termination of the criminal proceedings in favor of the accused:

> This requirement 'avoids parallel litigation over the issues of probable cause and guilt ... and it precludes the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.' Furthermore, 'to permit a convicted criminal to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit.'

*Id.* at 484, 114 S.Ct. at 2371. (internal citations omitted).

Based on the similarity between a common law malicious prosecution claim and a § 1983 claim for an unconstitutional conviction or sentence, the Court held that the termination of the criminal proceeding in favor of the

---

**5.** In support of her argument that her federal and state claims accrued on December 1, 1994, Michaels relies solely on *Piper v. Scher*, 221 N.J.Super. 54, 59, 533 A.2d 974 (App.Div.1987), a case that is wholly inapposite to the issue at hand. *Piper* stands for the proposition that a plaintiff may properly maintain a malicious prosecution claim in New Jersey where the prosecution unilaterally withdraws criminal charges, prior to trial, without any compromise agreement with the accused. *Id.* at 59–60, 533 A.2d 974. In such a case, the cause of action may accrue on the date of the unilateral withdrawal of the charges. *Id.* The court distinguished this situation from that in which the prosecution and the accused entered into a compromise agreement,

which would preclude a malicious prosecution claim. *Id.* at 58–59, 533 A.2d 974.

**6.** In support of its argument that plaintiff's § 1983 claim accrued on March 26, 1993, Newark relies on *Smith v. Wambaugh*, 887 F.Supp. 752 (M.D.Pa.1995), *aff'd, Smith v. Holtz*, 87 F.3d 108 (3d Cir.1996). Neither opinion supports a finding that plaintiff's § 1983 claim accrued when the Appellate Division reversed the conviction and remanded for a retrial. To the contrary, these cases support plaintiff's argument that her § 1983 claim accrued when the criminal charges against her were dismissed.

324

accused is a prerequisite to maintaining such a § 1983 claim.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 486–87, 114 S.Ct. at 2372.

The Court also concluded:

> Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.

*Id.* at 489–90, 114 S.Ct. at 2374 (internal citations omitted).

Because the precise holding of *Heck* is limited to outstanding convictions, however, it is not dispositive here. What is at issue here is not an outstanding conviction but the potential for a future conviction following a retrial. The Third Circuit in *Smith*, however, dealt with that precise issue.

In *Smith*, the Third Circuit observed that the concerns expressed and rules announced in *Heck* "apply equally to claims that, if successful, would necessarily imply the invalidity of a *future conviction on a pending charge*." *Smith*, 87 F.3d at 113 (emphasis supplied). As a result, the court held that "so long as success on [a § 1983] claim would imply the invalidity of a conviction in a pending criminal prosecution, such a claim does not accrue so long as the *potential* for a judgment in the pending criminal prosecution continues to exist." *Id.* (emphasis supplied).

In the underlying criminal proceeding in *Smith*, the Supreme Court of Pennsylvania, on direct appeal, reversed the conviction and remanded for a new trial. *Id.* at 110. Before the retrial, however, the court ordered the dismissal of all charges against the defendant based on newly discovered evidence of prosecutorial misconduct. *Id.* In the civil proceeding, the plaintiff—defendant in the criminal case—sought monetary damages under § 1983 for his allegedly unconstitutional conviction and imprisonment. *Id.*. The Third Circuit rejected the defendants' argument that the § 1983 claim accrued when the conviction was initially reversed and remanded. *Id.* at 110 & 113. The court reasoned that if the plaintiff had brought his § 1983 claim before the criminal charges were dismissed, success on that claim would have necessarily implied the invalidity of a future conviction on the still pending criminal charges. *Id.* at 112–13. As a result, the court held that the plaintiff's § 1983 claim did not accrue until the Supreme Court of Pennsylvania ordered the dismissal of all criminal charges. *Id.* at 113.[7]

Based on the foregoing, it is clear to this court that in order to maintain a § 1983 claim for an unconstitutional conviction or imprisonment where success on such a claim would necessarily imply the invalidity of an outstanding or potential conviction, there must first be a "final" termination of the criminal proceeding in favor of the plaintiff. Without such finality, the potential for inconsistent determinations in the civil and criminal cases will continue to exist, thereby contravening the spirit, if not the holdings, of *Heck* and *Smith*. Moreover, if a plaintiff is

7. *See also Girdler v. Dale*, 859 F.Supp. 1279, 1282, n. 3 (D.Ariz.1994) (holding that § 1983 claims accrued when all charges were dismissed rather than a previous date on which the conviction was vacated on the theory that the charges remained pending until the dismissal).

permitted to maintain a § 1983 claim in federal court in a case in which, based on the same evidence, he or she may ultimately be convicted in state court, unnecessary litigation with, perhaps, inconsistent results, harassment, and duplication would eventuate, all of which conflict with the most basic principles of comity and federalism.

Furthermore, to require finality is entirely consistent with *Heck* despite the language therein suggesting that a "reversal" serves as a favorable termination. 512 U.S. at 485–87, 114 S.Ct. at 2372. By using the term "reversal," the Supreme Court could not have intended to establish a bright-line rule whereby *any* reversal of a criminal conviction acts as a favorable determination. Clearly, some "reversals" connote "finality," while others do not.[8] The Third Circuit agreed when it held in *Smith* that a reversal of a conviction on evidential grounds and remand of the criminal proceedings—the precise factual scenario here—did not represent a favorable termination within the spirit of *Heck.* 87 F.3d at 113. The Eleventh Circuit in *Kelly v. Serna,* 87 F.3d 1235 (11th Cir.1996), was similarly explicit:

> Traditionally, setting aside a conviction and remanding for retrial or dismissal was termed a 'vacation' of the conviction; 'reversal' of a conviction meant no retrial was permitted. In this context, the Supreme Court's use of the term 'reversal' is appropriate to signify the termination of criminal proceedings. As courts have come to use these terms without regard to this distinction, however, we take this opportunity to make clear that by 'reversal' we mean without the possibility for retrial. When retrial is not an option, reversal is a termination of the prosecution.

*Id.* at 1240, n. 3 (internal citations omitted).

Consequently, this court rejects Newark's argument that a final termination of the criminal proceedings in favor of Michaels occurred on March 26, 1993, the date of the Appellate Division's "reversal." Because the

Appellate Division remanded the criminal case for a retrial, and because the prosecution still had the right to appeal the decision to the state's highest court, and did so, "the potential for a judgment in the pending criminal prosecution continue[d] to exist." *Smith,* 87 F.3d at 113. The Appellate Division's reversal, therefore, was not a "final" termination within the spirit of *Heck* and *Smith.*

Similarly, because the Supreme Court of New Jersey affirmed the Appellate Division's order remanding the case for a retrial, plaintiff's § 1983 claim could not have accrued on June 23, 1994, the date of the affirmance, unless success on plaintiff's § 1983 claim would not have implicated the invalidity of a conviction in the still-pending criminal prosecution. It would have. It was still possible for the prosecution to present the testimony of the allegedly abused children at a criminal retrial by proving at a hearing, albeit by clear and convincing evidence, that such testimony would be trustworthy. The possibility also existed that the civil and criminal proceedings would provide inconsistent results based on the same evidence, thereby implying the invalidity of a conviction in the still-pending criminal proceeding.

For the foregoing reasons, this court finds that plaintiff's § 1983 claim did not accrue until December 1, 1994, the date upon which the criminal charges against her were dismissed. It was not until this date that there was a "final" termination of the criminal proceedings in her favor. Thus, the complaint, which was served on June 13, 1996, was timely with respect to plaintiff's § 1983 claim.

### 2. *State Law Claims Under The New Jersey Tort Claims Act*

■ In addition to her § 1983 claim, Michaels alleges state law claims for malicious prosecution, intentional infliction of emotional distress, negligent training and supervision, abuse of process, and negligent and malicious

---

8. For example, a reversal by a state's highest court along with an order to dismiss all criminal charges, such as in *Smith,* would represent a final termination of the criminal proceeding. Conversely, where an appellate court "reverses" the conviction and remands for a new trial, termination would logically await a verdict in the criminal proceedings, a dismissal of the charges, or the like.

prosecutorial misconduct. Complaint, Counts One, Two, Three, Five, and Six. Newark contends that these claims should be dismissed because plaintiff has not complied with the following provisions of the New Jersey Tort Claims Act: [9]

1. N.J.S.A. 59:8–8(b), requiring that the claims against a public entity be filed within two years of accrual;
2. N.J.S.A. 59:8–8(a), requiring a plaintiff to provide a notice of claim to the public entity within ninety days of accrual;
3. N.J.S.A. 59:8–4, setting forth formal requirements of the notice of claim form; and
4. N.J.S.A. 59:8–6, authorizing a public entity to adopt its own personalized notice of claim form.

### a. *Statute of Limitations,* *N.J.S.A. 59:8–8(b)*

■ Michaels contends, erroneously, that her state law claims, with the exception of her malicious prosecution claim, are subject to New Jersey's two-year statute of limitations for personal injuries, N.J.S.A. 2A:14–2. Michaels further contends, also erroneously, that New Jersey's six-year statute of limitations, N.J.S.A. 2A:14–1, applies to her malicious prosecution claim. Because the City of Newark is a public entity within the meaning of the New Jersey Tort Claims Act, however, all of plaintiff's state law claims asserted against it, including plaintiff's malicious prosecution claim, are subject to the Act's two-year statute of limitations, N.J.S.A. 59:8–8(b).

Once again, however, the more problematic question is when the state law causes of action accrued. Michaels maintains that all of her claims accrued on December 1, 1994, the date on which the criminal charges were dismissed. Newark, on the other hand, argues that plaintiff's state law causes of action, with the exception of her malicious prosecution claim, accrued when plaintiff should have discovered by due diligence that she had causes of action, a point in time prior to the Appellate Division's reversal on March 26, 1993. Moreover, consistent with its posi-

tion regarding the § 1983 claim, Newark maintains that plaintiff's malicious prosecution claim accrued on March 26, 1993.

■ "Ordinarily, a statute of limitations begins to run when all elements of a cause of action are present or, more plainly, 'from the moment of the wrong.'" *See Amland Properties Corp. v. Aluminum Co. of America,* 808 F.Supp. 1187, 1190 (D.N.J.1992) (quoting *Lopez v. Swyer,* 62 N.J. 267, 274, 300 A.2d 563 (1973)). If equity dictates, however, New Jersey will apply the "discovery rule" which will delay the accrual of a cause of action until the injured party discovers, or by the exercise of reasonable diligence should discover, that the elements of a claim exist. *Vispisiano v. Ashland Chemical Co.,* 107 N.J. 416, 426, 527 A.2d 66 (1987); *Terrace Condominium Ass'n v. Midlantic National Bank,* 268 N.J.Super. 488, 502, 633 A.2d 1060 (Law Div.1993).

■ Only plaintiff's malicious prosecution claim includes the element of a termination in favor of the accused. Her other claims, therefore, accrued at the very latest, when plaintiff had reason to know that the elements of the claims existed. This occurred at or about the time of plaintiff's arrest on July 12, 1985. *See, e.g., Rose v. Bartle,* 871 F.2d 331, 350–51 (3d Cir.1989) (discussing the distinction between malicious prosecution and abuse of process, and holding that an abuse of process claim accrues on the date of arrest); *Deary v. Three Un-Named Police Officers,* 746 F.2d 185, 193–94 (3d Cir.1984) (holding that only malicious prosecution requires a favorable termination of the criminal proceedings, and that claims for intentional infliction of emotional distress and abuse of process accrue on the date of arrest); *Earl v. Winne,* 14 N.J. 119, 128–29, 101 A.2d 535 (1953) (quoting *Ash v. Cohn,* 119 N.J.L. 54, 58, 194 A. 174 (E. & A. 1937)) (discussing the distinction between a malicious prosecution claim, which requires a favorable termination of the criminal proceedings, and abuse of process, which does not); *Pisano v. City of Union City,* 198 N.J.Super.

---

9. The New Jersey Tort Claims Act requirements do not apply to the § 1983 claim set forth in Count Four of plaintiff's complaint. *Fuchilla v.*

*Layman,* 109 N.J. 319, 330–31, 537 A.2d 652 (1988).

588, 593, 487 A.2d 1296 (Law Div.1984) (holding that, unlike malicious prosecution claim, false arrest claim accrues on the date of the arrest). Consequently, because Michaels did not file her complaint until June 13, 1996, her state law claims, with the exception of her malicious prosecution claim, are time-barred under N.J.S.A. 59:8–8(b).[10] Counts Two, Three, Five, and Six of the complaint are hereby dismissed as to Newark.

■ As with the § 1983 claim discussed above, the accrual of the malicious prosecution claim depends on when the criminal proceedings terminated favorably to plaintiff.[11] This determination, unlike the accrual of the § 1983 claim, however, must be based on New Jersey substantive law.

■ Newark, in support of its position that the malicious prosecution claim accrued on the date of the Appellate Division's reversal,[12] relies on *Muller Fuel Oil Co. v. Insur-* ance Co. of North America, 95 N.J.Super. 564, 232 A.2d 168 (App.Div.1967), which held as follows:

> The tortious act [of malicious prosecution] is committed ordinarily by the filing of a criminal complaint with malice and without probable cause.... Often, as here, the accused is arrested, required to post bail to secure his liberty pending trial, and his reputation is adversely affected. Thus, damage flows immediately from the tortious act. But the accused may not sue for any damage sustained unless and until the criminal proceeding has terminated in his favor. In addition to the proof of the termination in his favor, 'the plaintiff must adduce affirmative proof ... tending to show the falsity of or want of probable cause for the charge laid against him, or that the defendant did not honestly believe in his guilt.' Thus, although a favorable

---

10. On the date of plaintiff's arrest, N.J.S.A. 59:5–3 (repealed July 8, 1988) was still in effect. This statute prohibited prisoners from suing public entities while in institutional confinement, and suspended the accrual of a prisoner's cause of action until release from confinement. N.J.S.A. 59:5–3. On July 9, 1982, this court in *Holman v. Hilton*, 542 F.Supp. 913 (D.N.J.1982), *aff'd*, 712 F.2d 854 (3d Cir.1983), declared N.J.S.A. 59:5–3 unconstitutional. *Id.* at 922. Because this statute was not repealed until July 8, 1988, however, it remained in effect until that date. *Small v. Department of Corrections*, 243 N.J.Super. 439, 449, 579 A.2d 1263 (App.Div.1990) (holding that the plaintiff's cause of action accrued on the date of the repealer statute, not on the date the wrong occurred, despite the federal court's ruling as to the statute's unconstitutionality). Although it is not entirely clear from the record, it does not appear that plaintiff was in prison pending trial. If she was not, this statute would not have applied to her, *see Pisano*, 198 N.J.Super. at 591–93, 487 A.2d 1296, and her state law causes of action, with the exception of her malicious prosecution claim, would have accrued on July 12, 1985. If, however, plaintiff was imprisoned pending trial, these claims may not have accrued until as late as July 8, 1988. In either case, because plaintiff did not file her complaint until June 13, 1996, her state law claims, with the exception of her malicious prosecution claim, are time-barred.

11. When the relevant facts are undisputed, as here, "the existence of ... favorable termination of proceedings is a question of law for the court." *Williams v. Page*, 160 N.J.Super. 354, 361, 389 A.2d 1012 (App.Div.1978). When making such a decision in a case where there has

been "a judicial determination with respect to the criminal proceeding," the judge before whom the malicious prosecution action is being tried must "analyze what occurred before the criminal court and the effect thereof." *Id.*

12. Prior to the amendment to the New Jersey Tort Claims Act on June 23, 1994, the Act did not apply to employees of public entities. *Chatman v. Hall*, 128 N.J. 394, 403, 608 A.2d 263 (1992); *Morgan v. Union County Board of Chosen Freeholders*, 268 N.J.Super. 337, 356–57, 633 A.2d 985 (App.Div.1993). Thus, if Newark is correct that plaintiff's malicious prosecution claim accrued on March 26, 1993, then the individual defendants could be held liable even if plaintiff failed to comply with the Act's limitations and notice provisions. In other words, the Act's two-year statute of limitations and notice requirements would not apply to the individual defendants if the cause of action accrued prior to the amendment and the six-year statute of limitations would apply to plaintiff's malicious prosecution claim. *Earl v. Winne*, 14 N.J. at 132, 101 A.2d 535. On the other hand, a finding that plaintiff's claim accrued on June 23, 1994 (which is, ironically, the date of both the New Jersey Tort Claims Act amendment and the Supreme Court's affirmance in *State v. Michaels*), would serve to bar plaintiff's claim against these defendants unless plaintiff filed within the limitations period and satisfied the notice provision. Because plaintiff did not file her notice of claim until February 27, 1995, it would be untimely under this scenario. The court is puzzled as to why the individual defendants in opposing Newark's motion to remand or to dismiss did not flag this issue.

termination of the criminal proceeding is a condition precedent to institution of the action, the 'essence' of the tort is the wrongful conduct in making the criminal charge. Since a suit for malicious prosecution must await a favorable termination of the criminal proceeding, the statute of limitations does not begin until such termination.

*Id.* at 576–77, 232 A.2d 168 (internal citations omitted). Other New Jersey courts similarly hold that a favorable termination is elemental to a cause of action for malicious prosecution. *See, e.g., Penwag Property Co., Inc. v. Landau,* 76 N.J. 595, 599, 388 A.2d 1265 (1978); *Lind v. Schmid,* 67 N.J. 255, 262, 337 A.2d 365 (1975); *Fleming v. United Parcel Service, Inc.,* 273 N.J.Super. 526, 530, 642 A.2d 1029 (App.Div.1994); *Mondrow v. Selwyn,* 172 N.J.Super. 379, 384, 412 A.2d 447 (App. Div.1980).

When a favorable termination occurs is, again, the question. New Jersey courts have framed the inquiry as "whether the termination was or was not *dispositive* as to the accused's innocence of the crime." *Fleming v. United Parcel Service, Inc.,* 255 N.J.Super. 108, 150, 604 A.2d 657 (Law Div.1992) (emphasis supplied) (quoting *Rubin v. Nowak,* 248 N.J.Super. 80, 83, 590 A.2d 249 (App.Div.1991)). Other than the requirement that the termination be dispositive, however, New Jersey caselaw provides little guidance. The Restatement (Second) of Torts (the "Restatement"), on the other hand, is instructive. Section 659 [13] of the Restatement provides that "[c]riminal proceedings are terminated in favor of the accused by ... (c) the formal abandonment of the proceedings by the public prosecutor, or ... (f) a final order in favor of the accused by a trial or appellate court." Commentary to this section makes clear that a "final order" by an appellate court refers to an order "that precludes the bringing of further proceedings against the accused." Restatement (Second) of Torts § 659, comment g (1977). Other commentary makes clear that an order will not be considered final when the possibility of an appeal or retrial exists:

> Ordinarily a verdict of not guilty rendered by a jury or court after trial constitutes a final determination of criminal proceedings in favor of the accused. If, however, a statute gives to the state a right of appeal under which a new trial may be granted, a verdict of not guilty is not such a termination of the proceedings as will support an action [for malicious prosecution] until the *final disposition* of the appeal and such further processes as it may entail.

Restatement (Second) of Torts § 659, comment g (emphasis supplied).

The Restatement and New Jersey's requirement of a "dispositive termination" are generally consistent with the previous discussion of federal law under *Heck* and *Smith.* Moreover, the majority of state courts that have analyzed this and similar issues, both with respect to criminal and civil proceedings, concur that a reversal of a conviction by an appellate court must be "final." [14]

---

13. New Jersey courts have relied on this section of the Restatement in other contexts. *See, e.g., Rubin v. Nowak,* 248 N.J.Super. 80, 83, 590 A.2d 249 (App.Div.1991).

14. With respect to criminal proceedings, *see, e.g., Day v. Zubel,* 112 Nev. 972, 922 P.2d 536, 539 (1996) (holding that "the final termination of the criminal proceedings occurred when criminal charges ... were dismissed with prejudice" rather than when the accused was released from prison pending a retrial); *Greenberg v. Wolfberg,* 890 P.2d 895, 904, n. 36 (Okla.1994) ("A proceeding is not terminated until all appeals concerning the cause are concluded.") (citing Restatement (Second) of Torts § 659, comment f and § 674, comment j). As to civil proceedings, *see, e.g., Barrett Mobile Home Transport, Inc. v. McGugin,* 530 So.2d 730, 733 (Ala.1988) ("We hold that a malicious prosecution action does not accrue until the time for filing a notice of appeal in the underlying case has expired; and, if an appeal is taken, the action for malicious prosecution will not accrue until the appeal is finally decided."); *Hutchinson Travel Agency, Inc. v. McGregor,* 10 Kan.App.2d 461, 701 P.2d 977, 979 (1985) ("An action for malicious prosecution cannot be brought if the underlying action is still pending and undetermined."); *Moran v. Klatzke,* 140 Ariz. 489, 682 P.2d 1156, 1158–59 (Ct.App. 1984) ("The majority rule prevents repetitive and unnecessary litigation. It would be a waste of judicial resources to allow the plaintiff in a malicious prosecution action to prosecute his claim only to have it rendered meaningless if later the appeal of the underlying action is decided against him."); Restatement (Second) of Torts § 674, comment j (1977) ("If an appeal is taken,

Other courts, albeit a distinct minority, have decided otherwise. *See* cases collected in Annotation, 41 A.L.R.2d 863, and Annotation, 87 A.L.R.2d 1047. *See also Barrett Mobile Home Transport,* 530 So.2d at 732–33; *Cazares v. Church of Scientology of California, Inc.,* 444 So.2d 442, 446–47 (Fla.Dist. Ct.App.1983); *Parisi v. Michigan Townships Association,* 123 Mich.App. 512, 332 N.W.2d 587, 589–91 (1983). In this court's view, the only somewhat sensible suggestion coming out of these cases is to commence the running of the statute of limitations upon the initial entry of a favorable judgment and then, in the event of an appeal, stay the action and toll the statute of limitations until a final appellate determination. *See generally, Toff & Paul v. Superior Court,* 239 Cal. Rptr. 799, 800–01 (Cal.Ct.App.1987); *Levering v. National Bank of Morrow County,* 87 Ohio St. 117, 100 N.E. 322 (1912).

To the extent that they have not done so already, New Jersey courts would opt for the majority view requiring "finality" of the proceedings for all of the reasons noted in this court's discussion of the accrual of the § 1983 claim. Moreover, the minority view lacks merit in situations in which the appellate court remands for a retrial. Additionally, even in cases in which the appellate court does not remand, the minority view would engender confusion and, perhaps, unfairness under the New Jersey Tort Claims Act. If, for example, a malicious prosecution claim accrued upon a favorable, albeit not final, decision by an intermediate appellate court, even if the action were stayed and the statute of limitations were tolled, a malicious prosecution plaintiff would still have to file a notice of claim within ninety days of accrual because the Act does not have a tolling provision.

Thus, this court finds that, under New Jersey substantive law, a malicious prosecution claim does not accrue until there is a "final" and "dispositive" termination of the criminal proceedings in favor of the accused, such that it is no longer possible for an appeal or for a retrial of the criminal proceedings. This did not occur until December 1, 1994, the date posited by plaintiff. Thus, the complaint, which was filed on June 13, 1996, was timely with respect to plaintiff's malicious prosecution claim.

**b.** *Timeliness Of Notice Of Claim, N.J.S.A. 59:8–8(a)*

■ The New Jersey Tort Claims Act, N.J.S.A. 59:8–8(a), provides that, in order to maintain a cause of action against a public entity, a claimant must file a notice of claim with the public entity within ninety days of accrual of the cause of action. A claimant's failure to satisfy this precondition mandates dismissal. *See Madej v. Doe,* 194 N.J.Super. 580, 588–89, 477 A.2d 439 (Law Div.1984) (citing *Pinckney v. Jersey City,* 140 N.J.Super. 96, 98, 355 A.2d 214 (Law Div.1976)); *Marley v. Borough of Palmyra,* 193 N.J.Super. 271, 299, 473 A.2d 554 (Law Div.1983) (citing *Speer v. Armstrong,* 168 N.J.Super. 251, 255, 402 A.2d 963 (App.Div.1979); N.J.S.A. 59:8–3).

■ Thus, as with the statute of limitations issue discussed above, the timeliness of plaintiff's notice of claim depends on when her claims accrued. As discussed in the preceding section, Counts Two, Three, Five, and Six accrued on or about June 12, 1985, and Count One accrued on December 1, 1994. Plaintiff filed her notice of claim on February 27, 1995. Consequently, her notice of claim was timely as to Count One, and untimely with respect to Counts Two, Three, Five, and Six. Accordingly, even had Counts Two, Three, Five, and Six of plaintiff's complaint not already been dismissed on statute of limitations grounds, they would be dismissed for failing to comply with N.J.S.A. 59:8–8(a). Plaintiff's malicious prosecution claim will survive as long as plaintiff's notice of claim was otherwise in compliance with N.J.S.A. 59:8–4 and –6 although, as will become clear, that survival will be short-lived.[15]

the proceedings are not terminated until the final disposition of the appeal and of any further proceedings that it may entail.").

**15.** Without articulating any reasons for its position, Newark contends that the complaint should be dismissed because the notice of claim was "grossly deficient" under N.J.S.A. 59:8–4. Newark's Brief at 6. This court disagrees. An examination of the notice of claim reveals that it substantially comports with the requirements set forth in N.J.S.A. 59:8–4.

### 3. *Rule 12(b)(6) Motion*

■ Newark further contends that, in the event the complaint is not dismissed on any of the foregoing grounds, it should be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R.Civ.P. 12(b)(6). The only two claims that this court must consider for this purpose are the ones that have not already been dismissed, *i.e.*, the § 1983 and malicious prosecution claims.

Generally.speaking, Rule 12(b)(6) motions are disfavored, *Panek v. Bogucz,* 718 F.Supp. 1228, 1229 (D.N.J.1989), and the standard for entitlement to relief is relatively high.

> In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). *See also D.P. Enterprises v. Bucks County Community College,* 725 F.2d 943 (3d Cir.1984).

> The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1973).

In making this determination, a court must assume the truth of the factual allegations in the complaint and draw all reasonable inferences that can be drawn therefrom in favor of the nonmoving party. *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990). A plaintiff generally must set forth sufficient information to outline the elements of his or her claim or to permit inferences to be drawn that said elements exist. Wright and Miller, 5A Federal Practice and Procedure § 1357 (2d ed. 1990). Where the pleaded facts and reasonable inferences fail to even arguably state a claim, however, this court is compelled to dismiss the claim—or the complaint.

> Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law. This procedure, operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one. What 12(b)(6) does not countenance are dismissals based on a judge's disbelief of the complaint's factual allegations.

*Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989) (internal citations omitted).

For the same reasons that Newark has been deemed a nominal party, the complaint against it will be dismissed, pursuant to Fed. R.Civ.P. 12(b)(6). The claims asserted, and the facts alleged, in the complaint are limited to the investigation and prosecution of Michaels for her alleged involvement in the sexual abuse of children while working at Wee Care. Because the complaint is bereft of allegations linking Newark to such activities, plaintiff fails to state a claim upon which relief can be granted.[16]

---

Newark further contends that the complaint should be dismissed because plaintiff did not return Newark's "personalized" form, pursuant to N.J.S.A. 59:8–6, thus depriving Newark of information it deemed to be essential. Newark's Brief at 6. Newark has not provided this court with a copy of its personalized form or suggested what "essential" information was missing. Newark's motion to dismiss plaintiff's complaint for failure to comply with N.J.S.A. 59:8–4 or –6 is, therefore, denied.

16. Final judgment, by way of a dismissal with prejudice, is appropriately rendered under Rule 12(b)(6) when it is "plain that the plaintiff has no claim to state." When a plaintiff has imperfectly stated what may arguably be a valid claim, however, "leave to amend is ordinarily in order." *Alley v. Resolution Trust Corp.,* 984 F.2d 1201, 1207 (D.C.Cir.1993) (J. Ginsburg) (citing *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–02 (other citations omitted)).

The dismissal of plaintiff's complaint as to Newark will initially be without prejudice, and

### C. *Sua Sponte Dismissal As To Non–Moving Defendants*

It is well established that, even if a party does not make a formal motion to dismiss, the court may, *sua sponte,* dismiss the complaint where the inadequacy of the complaint is clear. *See, e.g., Bryson v. Brand Insulations, Inc.,* 621 F.2d 556, 559 (3d Cir.1980); *Atlantic Coast Demolition & Recycling, Inc. v. Board of Chosen Freeholders of Atlantic County,* 893 F.Supp. 301, 316 (D.N.J.1995); *Wheeler v. Nieves,* 762 F.Supp. 617, 627 (D.N.J.1991); *Pittman v. LaFontaine,* 756 F.Supp. 834, 847 (D.N.J.1991). Because the court's ruling regarding the accrual of plaintiff's causes of action applies equally to the non-moving defendants, this court on its own motion will decide this issue as to those defendants.

Based on the foregoing rulings that the § 1983 and malicious prosecution claims accrued on December 1, 1994, these claims were filed timely on June 13, 1996. Likewise, plaintiff's notice of claim as to plaintiff's malicious prosecution claim was filed timely on February 27, 1995. Conversely, plaintiff failed to comply with the New Jersey Tort Claims Act's limitations and notice provisions as to the remaining state law claims and those claims, therefore, must fail as against the non-moving defendants. Accordingly, the court will, *sua sponte,* dismiss Counts Two, Three, Five, and Six of the complaint in their entirety.

### III. *Conclusion*

For the reasons discussed above, Newark's motion to remand is hereby denied, Counts One and Four of the complaint are hereby dismissed without prejudice (*see* footnote 16) as to Newark, and Counts Two, Three, Five, and Six of the complaint are hereby dismissed with prejudice as to all defendants. An appropriate order will issue.

plaintiff will be given thirty days to amend her complaint to assert a valid § 1983 or malicious prosecution claim against Newark if she can do so consistent with the requirements of Fed.

R.Civ.P. 11. If plaintiff fails to do so, her complaint against Newark will be dismissed with prejudice.