United States Court of Appeals,

Fifth Circuit.

No. 91–1351.

Mark BARNES, Plaintiff–Appellant

v.

WESTINGHOUSE ELECTRIC CORPORATION, et al., Defendants–Appellees.

June 8, 1992.

Appeal from the United States District Court For the Northern District of Texas.

Before DAVIS, JONES and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

During his work on a remodeling project at Dallas/Fort Worth Airport, Mark Barnes was injured after drilling into a high voltage bus duct which was part of the building's electrical system. Barnes filed this personal injury and product liability action in state court against Westinghouse—manufacturer of the bus duct—and others, alleging that their negligence caused his injuries. The case was subsequently removed to federal court, and the district court granted summary judgment for Westinghouse because Barnes did not file suit within the ten-year statute of repose. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 16.009 (West 1986). Finding no error, we affirm.

I

Barnes, an employee of Trinity Contractors, was injured on June 15, 1984 when, during the course of a remodeling project, he drilled into a pre-existing electrical bus duct[1] manufactured by Westinghouse, and suffered, among other things, disfiguring burns to approximately seventy percent of his body. The bus duct which is the basis for Barnes' complaint was designed and manufactured

[1]Bus duct is a metal-encased structure containing a number of rounded edge "bus bars" which transport electrical power in commercial buildings. The bus bars are enclosed within housing constructed of 14–gauge and 16–gauge steel. By transporting and distributing electricity throughout commercial buildings, the bus duct is meant to facilitate efficient power distribution.

by Westinghouse during 1972–73 for permanent installation into Dallas/Fort Worth airport, including the equipment room above American Airlines Terminal 3E, where Barnes was injured.[2]

Barnes filed his Original Petition against Westinghouse and others in state district court in Tarrant County, Texas, on July 23, 1985. Approximately four years later, on January 12, 1989, Westinghouse removed Barnes' suit to federal court alleging diversity jurisdiction under 28 U.S.C. § 1332. Barnes promptly moved to remand to state court, and the district court denied his motion.

Subsequently, Westinghouse filed a motion for summary judgment, asserting that Barnes' action was barred by the Texas ten-year statute of repose—limiting actions for liability resulting from "improvement[s]" to real property to ten years from "substantial completion" of that improvement. TEX.CIV.PRAC. & REM.CODE ANN. § 16.009 (1986).[3] Approximately a year after his motion to remand was denied, Barnes filed a motion for rehearing. The district court denied Barnes' motion for rehearing, and granted Westinghouse's motion for summary judgment. Barnes appeals the judgment for Westinghouse, arguing that his motion to remand should have been granted and that summary judgment was improper because the bus duct was a component part of an improvement and, therefore, outside the state of repose.

## II

### A

Barnes argues that the district court erred in denying his motion for rehearing of his motion

---

[2]Specifically, the bus duct was a "POW–R–WAY" bus duct—that is, a duct specifically manufactured for permanent installation into particular structures according to design specifications submitted to Westinghouse. It was in conformity with the plans and specifications submitted by Ling Oliver O'Dywer Electric, Inc., the electrical subcontractor who installed the bus duct at the airport. The construction of improvements of Terminal 3E, including the installation of the bus duct, was substantially completed by January 31, 1974.

[3]The relevant portion of section 16.009 is quoted in its entirety *infra* at Part B.

to remand on the grounds that the one-year limitation on removal contained in 28 U.S.C. § 1446(b)[4] is jurisdictional[5] and thereby may be raised at any time prior to judgment pursuant to 28 U.S.C. § 1447(c).[6]  We disagree.

Barnes filed his Sixth Amended Original Petition—a petition naming for the first time completely diverse defendants—on December 16, 1988.  Less than thirty days later, Westinghouse filed a petition for removal to the United States District Court for the Northern District of Texas.  *See* 28 U.S.C. § 1441.  Within thirty days of filing, Barnes filed a motion to remand, claiming that Westinghouse sought affirmative relief in the state district court after the case became removable, thereby waiving the opportunity to rightfully remove the case.  The district court denied Barnes' motion to remand.

---

[4]28 U.S.C. § 1446(b) provides:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

[5]Specifically, Barnes contends:

> "[T]hat the district court erred in denying his motion for rehearing of motion for remand because Westinghouse removed the suit to federal court over three years after the suit was filed in state district court in violation of the one year limitation on removal contained in section 1446(b), and the district court therefore lacked subject matter jurisdiction and should have remanded the case to the 48th District Court of Tarrant County, Texas."

Brief for Appellant at 14, *Barnes v. Westinghouse Electric Corporation,* No. 91–1351 (5th Cir. filed June 17, 1991) ["Appellant's Brief"].  Barnes confuses removal jurisdiction with subject-matter or original jurisdiction.  *See infra* notes 8–10 and accompanying text.

[6]28 U.S.C. § 1447(c) provides in pertinent part:

> A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a)....  If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

Over a year later, in September 1990, Barnes filed a motion for rehearing of his motion to remand. For the first time, Barnes argued that a case cannot be removed to federal court on the basis of diversity more than one year after commencement of the action. *See* 28 U.S.C. § 1446(b).[7] None of the parties dispute that Westinghouse removed the case more than one year after the commencement of the action. The district court, however, denied Barnes' motion for rehearing, reasoning that the removal procedures set forth at 28 U.S.C. §§ 1446(b) and 1447(c) were not jurisdictional. Therefore, the district court reasoned that if a case was in state court for over a year, and then removed pursuant to 28 U.S.C. § 1332, failure to comply with the thirty-day requirement imposed by section 1447(c) results in a waiver of a plaintiff's rights to object to removal defects resulting from noncompliance with section 1446(b). Because Barnes waited over twenty months to move for rehearing on his motion to remand, based on Westinghouse's failure to remove within one year of the original action, the district court found that Barnes had waived his right to object pursuant to section 1447(c).

We are not persuaded by Barnes's arguments that section 1446(b) is jurisdictional in nature, and therefore may be raised at any time. The language of the statute belies Barnes' contentions and indicates that sections 1446(b) and 1447(c) are procedural provisions.[8] As we stated in *Baris v.*

---

[7]Pursuant to an amendment enacted November 19, 1988, section 1446(b) now states that a case may not be removed on the basis of jurisdiction conferred by section 1332 more than one year after commencement of the action. Section 1447(c) of Title 28 states that a motion to remand a case on the basis of a defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a).

The amendments to sections 1446(b) and 1447(c) contain no effective date. Therefore, the effective date of these sections is the date the Act was enacted, which is November 19, 1988. *See In re Shell Oil Co.,* 932 F.2d 1523, 1526 (5th Cir.1991), *cert. denied,* ⸺ U.S. ⸺, 112 S.Ct. 914, 116 L.Ed.2d 814 (1992) (effective date of amendment to section 1447(c) is November 19, 1988, and in most cases, it applies to cases pending on this date); *see also In re Shell Oil Co.,* 932 F.2d 1518 (5th Cir.1991) (companion case to *Shell, supra* ); *Greer v. Skilcraft,* 704 F.Supp. 1570, 1582–83 (N.D.Ala.1989) (en banc) (effective date of amendment to section 1446(b) is November 19, 1988, and it applies to cases pending on this date).

[8]*See supra* notes 4 and 6.

*Sulpicio Lines,* "this court has had little difficulty in distinguishing between removal jurisdiction,[9] on the one hand, and original or subject matter jurisdiction,[10] on the other hand." *Baris v. Sulpicio Lines, Inc.,* 932 F.2d 1540, 1544 (5th Cir.), (footnote omitted) *cert. denied,* ⸺ U.S. ⸺, 112 S.Ct. 430, 116 L.Ed.2d 449 (1991) (citations omitted); *see also In re Shell Oil Co.,* 932 F.2d 1518, 1522–23 (5th Cir.1991), *cert. denied,* ⸺ U.S. ⸺, 112 S.Ct. 914, 116 L.Ed.2d 814 (1992) (noting that defects in removal procedure include all non-jurisdictional defects, and concluding that plaintiffs waived any non-jurisdictional grounds for remand existing at time of removal by not moving to remand within 30 days of notice of removal); *see also In re Shell Oil Co.,* 932 F.2d 1523 (5th Cir.1991) (companion case to *Shell, supra* ).

We have noted that the word "procedural" in section 1447(c) refers to "any defect that does not go to the question of whether the case originally could have been brought in federal district court...." *Baris,* 932 F.2d at 1544; *see also* H.R.REP. NO. 100–889, 100th Cong., 2d Sess. 7 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 6032–33 (noting 1988 changes to sections 1446(b) and 1447(c) and discussing removal procedure). This distinction between removal jurisdiction and subject matter jurisdiction is applicable to section 1446(b), which speaks of the removal of cases not more than one year after the commencement of the action. We previously have noted that "[t]he time limitation for removal is not jurisdictional; it is merely "modal and formal and may be waived.' " *Nolan v. Boeing Co.,* 919 F.2d 1058, 1063 n. 6 (5th Cir.1990), *cert. denied,* ⸺ U.S. ⸺, 111 S.Ct. 1587, 113 L.Ed.2d 651 (1991) (citations omitted). Because Barnes did not move for rehearing on his motion to remand based on a procedural defect until approximately twenty months after Westinghouse's removal, we find that he waived his opportunity to call this procedural defect to the district court's attention.

---

[9]*See* 28 U.S.C. § 1441 ("Actions removable generally").

[10]*See, e.g.,* 28 U.S.C. §§ 1331 ("Federal question" jurisdiction) and 1332 ("Diversity of citizenship" jurisdiction).

B

Barnes also challenges the district court's conclusion that the bus duct was an improvement under section 16.009 of the Texas Civil Practice and Remedies Code, that no genuine issues of fact existed, and that Westinghouse was entitled to summary judgment as a matter of law. Barnes argues that the district court should not have granted Westinghouse's motion for summary judgment because the bus duct was merely a component part of an improvement and, therefore, outside the statute of repose. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 16.009 (West 1986). We find Barnes' contentions without merit.

Section 16.009 provides in relevant part:

> (a) A claimant must bring suit for damages for a claim listed in Subsection (b) against a person who constructs or repairs an improvement to real property not later than 10 years after the substantial completion of the improvement in an action arising out of a defective or unsafe condition of the real property or a deficiency in the construction or repair of the improvement.

*Id.* The term improvement, set forth in section 16.009, has been held to include "all additions and betterments to the freehold." *Dubin v. Carrier Corp.,* 731 S.W.2d 651, 653 (Tex.App.—Houston [1st Dist.] 1987) (citation omitted), *appeal after remand,* 798 S.W.2d 1 (Tex.App.—Houston [14th Dist.] 1989, writ dism'd by agr.). An improvement can be anything that permanently enhances the value of the premises, and it can even be something easily removable provided that it is attached and intended to remain permanently as part of the building. *See Dedmon v. Stewart–Warner Corp.,* 950 F.2d 244, 247 (5th Cir.1992), *citing Ablin v. Morton Southwest Co.,* 802 S.W.2d 788, 791 (Tex.App.—San Antonio 1990, writ denied) and *Dubin I,* 731 S.W.2d at 654. However, manufacturers of component parts of an improvement do not come within section 16.009's statutory language. *See Conkle v. Builders Concrete Prods. Mfg. Co.,* 749 S.W.2d 489, 491 (Tex.1988) (citation omitted). And, a materialman who does no more than manufacture or supply materials does not benefit from—section 5536a, § 2, the predecessor statute to—section 16.009.[11] *Reddix v. Eaton*

---

[11]Tex.Rev.Civ.Stat.Ann. art. 5536a, § 2 (West Supp.1982–83) is codified as amended in § 16.009.

*Corp.,* 662 S.W.2d 720, 724 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.) (citations omitted).

Barnes relies heavily on *Conkle* to support his argument that Westinghouse manufactured merely a component part of an improvement. In *Conkle* a worker at a concrete plant was killed when he got into a bin of a concrete batch plant to remove some objects that were trapped there. His parents sued Dillon Steel, the manufacturer of the concrete batch plant. The trial court granted summary judgment for Dillon Steel on the grounds that the Conkles' claim was barred by section 16.009, applicable to claims against persons who construct improvements to real property. The Texas Supreme Court held that summary judgment evidence raised fact issues whether the machinery in which Douglas died was an improvement to real property and whether Dillon Steel manufactured the entire unit or component parts only. The court emphasized that:

> Roy J. Dillon admitted that Dillon Steel did not manufacture or construct the mixer apparatus which is joined with the bins and hoppers to form a concrete batch plant. Thus, there was testimony that Dillon Steel had not manufactured the entire structure. Further, there was evidence that the plant is actually portable. The bins were first constructed at Dillon's plant and then moved to the batch plant's original location on the property of Lok Rok Corporation. It was only later that the plant was even placed on Builders' property.

*Conkle,* 749 S.W.2d at 491.

Barnes's reliance on *Conkle* is misplaced. Section 16.009 requires only that the item in question be "an improvement to real property." *See Rodarte v. Carrier Corp.,* 786 S.W.2d 94, 95 (Tex.App.—El Paso 1990, writ dism'd).[12] As the district court noted in this case, the bus duct was permanently affixed within the structure of Terminal 3E as part of an overall electrical system affixed

---

[12]In *Rodarte,* the court held that heater-air conditioner unit which had electrocuted Rodarte was an improvement to real property. The *Rodarte* court noted the unit was permanently connected to the premises by its connection to the duct work and that it was blocked into a corner of a building by other units which were permanently attached to the structure. Thus, Carrier Corporation was a manufacturer of an "improvement to real property." Because the unit was manufactured and installed more than ten years before the suit was filed, the court held that the wrongful death suit barred by section 16.009.

to the terminal.[13]  Westinghouse manufactured the bus duct for permanent installation into the terminal.  Thus, the bus duct was an addition and betterment to the freehold of Terminal 3E.  *Id.*  Barnes' argument that Westinghouse was the mere manufacturer of component parts is not persuasive because Westinghouse manufactured the entire bus duct system.  *See Dubin v. Carrier Corp.,* 798 S.W.2d 1, 2 (Tex.App.—Houston [14th Dist.] 1990, writ dism'd by agr.) (defendant Williams, responsible for manufacturing and designing wall heater unit, is entitled to statutory protection under section 16.009 because Williams both made a portion of the unit and also manufactured the entire assembly).  Westinghouse, as an entity that constructed an improvement within the meaning of section 16.009, is not a mere manufacturer of component parts and is, therefore, entitled to repose under section 16.009.


III

Accordingly, we AFFIRM.

---

[13]Barnes points to the testimony of Dr. Gary Richetto, a Westinghouse expert, to support his contention that the bus duct "is merely a component of the improvement in question."  Appellant's Brief at 16.  Dr. Richetto testified that he believed the various sections of busway were individual component parts of an overall electrical system.  We do not find his assertions persuasive or enough to defeat summary judgment, because Westinghouse manufactured the entire bus duct system—an improvement to real property.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) (mere evidence of a scintilla of evidence in support of plaintiff's position is insufficient to defeat summary judgment).  And, as Westinghouse indicates, Dr. Richetto apparently did not examine the bus duct, but based his testimony upon a review of literature concerning the product.

Barnes also asserts that Westinghouse did not install the bus duct, and Westinghouse concedes this fact in its brief.  This point will not defeat summary judgment.  *See Ellerbe v. Otis Elevator Co.,* 618 S.W.2d 870, 872 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.) (manufacturer of elevator would be a person performing or furnishing construction of the elevator, even though it did not install it in the building).