**Weldon D. FERGUSON, et al., Plaintiffs,**

v.

**SECURITY LIFE OF DENVER INSURANCE COMPANY, et al., Defendants.**

No. 3–97–CV–2106–BD.

United States District Court, N.D. Texas, Dallas Division.

March 2, 1998.

Barbara Elaine Rosenberg, Fred Misko, Jr., Law Office of Fred Misko, Jr., Dallas, TX, David G. Tekell, Malesovas Martin & Tekell, Waco, TX, for Weldon D. Ferguson, Gloria J. Ferguson.

George Edward Bowles, Harriet Ellan Miers, Thomas George Yoxall, Locke Purnell Rain Harrell, Dallas, TX, James F. Jorden, Raul A. Cuervo, Jorden Burt Berenson & Johnson, Miami, FL, for Security Life of Denver Ins. Co.

Jack Davis Sides, Jr., Law Office of Jack Davis Sides, Jr., Dallas, TX, for Randy Robertson.

## MEMORANDUM OPINION AND ORDER

KAPLAN, United States Magistrate Judge.

Plaintiffs have filed a motion to remand this case back to state court. For the reasons stated herein, the motion is granted.

### I.

Plaintiff Weldon D. Ferguson purchased a joint survivor whole life insurance policy from Security Life of Denver Insurance Company. This type of policy, also known as "second-to-die" insurance, covers two named insureds. The cash value of the policy increases on the death of the first insured and is payable to a designated beneficiary on the death of the second insured. Plaintiff wanted this policy as an estate planning tool to provide for the continued care of his severely disabled adult daughter. He thought a "second-to-die" policy would give him the most value for his money.

Plaintiff met with a Security Life agent in June 1990. Randy Robertson presented a joint survivor whole life policy to plaintiff and explained how the annual premiums were designed to "vanish" after a certain number of years. Robertson showed plaintiff an illustration where the premium would vanish in seven years based on a "crediting rate" of nine percent.[1] The crediting rate was guaranteed at nine percent for the first year and "at least 6.25% thereafter." (Plf. Motion, Ex. 4–A). Plaintiff requested additional illustrations at different rates. Robertson ran calculations at seven percent and eight percent. Based on these illustrations, plaintiff determined that the "worst case scenario was a 12 year vanish ..." (Plf. Motion, Ex. 4). Plaintiff testified that Robertson confirmed that his estimates were reasonable, although Robertson did not recall any such conversation. Plaintiff also said that Robertson encouraged him to believe that the premiums would vanish in approximately seven years.

Plaintiff purchased the policy in December 1990 and began making premium payments. Approximately six months later, he contacted Security Life and inquired when the policy would be eligible for an alternative paid-up insurance option. The company responded that "your policy will be eligible to become paid-up after the 8th policy year anniversary, December 12, 1998." (Plf. Motion, Ex. 4–E). This was confirmed by Robertson, who sent plaintiff an up-dated illustration with a handwritten note stating, "No changes. Still need to pay for seven years." (Plf. Motion, Ex. 4–F).

In October 1994, Security Life notified its policyholders that there would be significant reductions in the crediting rate due to recent

---

1. The "crediting rate" was fixed by Security Life and appears to be tied to the performance of other investments owned by the company. In 1994, Security Life told its policyholders that "[t]he effect of the drop in interest rates is that more premiums are required to 'vanish' the premiums on your JSWLE policy than may have been illustrated when you bought the policy." (Plf. Reply, Ex. 11).

changes in the tax laws. Plaintiff learned through the Texas Department of Insurance that the crediting rate was now 5.71% rather than nine percent as shown in the original illustration. He was told that it would take 23 years for his premiums to vanish based on the new crediting rate. Plaintiff surrendered his policy in December 1995 and received a partial premium refund in the amount of $18,250.00. He also hired a lawyer.

Plaintiff retained the Law Offices of Fred Misko, Jr. to file suit against Security Life on behalf of his wife and himself. James Mitchell, an attorney with the firm, had previously been involved in several cases involving alleged fraud and misrepresentation in the sale of vanishing premium policies. Mitchell investigated the case and concluded that plaintiff had viable claims against the insurance company. He drafted a petition alleging breach of contract, fraud, negligent misrepresentation, negligence, and violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act.

The original petition was filed in state court on March 6, 1996.[2] Plaintiffs amended their pleadings several weeks later to join Robertson as a party-defendant. They alleged that Robertson "represent[ed] that the premiums for the policy would be $6,645 per year for the first six years, with a final premium payment of $690 for year seven, and no premium payment due beyond year seven, for the remaining years of the policy." First Amended Petition ¶ 7 (Def. Hearing Ex. 2). This allegation was repeated in the third amended petition filed on May 9, 1996. Third Amended Petition ¶ 7 (Def. Hearing Ex. 3).

Security Life removed the case to federal court on June 7, 1996. Security Life, a Colorado corporation, maintained that Randy Robertson, a Texas citizen, was fraudulently joined as a party to this action to destroy federal diversity jurisdiction. Plaintiffs timely filed a motion to remand. They argued that the third amended petition stated a cause of action against Robertson for fraud, negligence, and negligent misrepresentation. The Court held a hearing on September 10, 1996. At the hearing, James Mitchell told the Court:

> I think [the petition] is very clear in what it states. It alleges Robertson went out and [sold] these policies. He told them it was going to vanish in seven years. It didn't vanish in seven years. Therefore, we have pled ... that Robertson and Security Life committed fraudulent acts, misrepresentations, they were negligent in not adequately explaining the policy. I just think it's really clear what we've alleged.

(Def. Response, Ex. C at 37). The Court found that plaintiffs stated a colorable claim against Robertson under Texas law and remanded the case back to state court.[3]

Security Life proceeded with discovery in the state court litigation. The insurance company sent interrogatories to plaintiffs in early 1997. Plaintiffs were asked to identify "each and every communication attributable to the Defendants which failed to accurately or fully disclose the operation of the Alternative Paid–Up Insurance Option." Plaintiffs responded:

> Robertson showed Plaintiff Weldon Ferguson various vanish ledger illustrations and

---

2. The petition was filed by Bryan Pope, an attorney with the Law Offices of Sandra Cook. Pope was formerly employed by the Misko firm and served as counsel of record during the early stages of this litigation.

3. The issue presented in the first motion to remand involved a pure question of law. Security Life argued that Robertson was not personally liable for actions taken in the course and scope of his employment on behalf of the insurance company. However, at least four federal district courts have ruled differently. See *Wainco Oil Corp. v. Commercial Union Assurance Co.*, No. C–94–301 (S.D.Tex. August 30, 1994); *Brenton v. Benson*, 6–94–CV–213 (E.D.Tex. June 30, 1994);

*Wardell v. Transportation Insurance Co.*, No. H–93–1621 (S.D.Tex. August 18, 1993); *Carter v. Builders Transport*, 812 F.Supp. 97 (W.D.Ky. 1993). A number of Texas cases are also in accord. See, e.g. *GAB Business Services v. Moore*, 829 S.W.2d 345, 349 (Tex.App.—Texarkana 1992, no writ); *State Farm Fire & Cas. Co. v. Gros*, 818 S.W.2d 908, 913 (Tex.App.—Austin 1991, no writ). These cases recognize that an insurance agent is personally liable for his own misconduct. The Court found that the better reasoned authority supported a cause of action against Robertson in his individual capacity for fraud, negligence, and negligent misrepresentation.

explained that the declared rate was guaranteed for the first year and that the actual rate would be based upon Security Life's crediting rate. Ledger illustrations indicated that a 6.25% rate was guaranteed by Security Life of Denver. The illustrations indicated, and Robertson explained, that the premiums would vanish in roughly seven years. Plaintiff was assured by Robertson that Security Life of Denver was a credible company, and the policy would perform as illustrated. Plaintiffs relied on the representation that the premiums would vanish in the period of time outlined by Robertson when the policy was purchased . . .

(Def. Response, Ex. C at 8).

Security Life deposed Weldon Ferguson on July 28–29, 1997. Ferguson was asked about the specific representations allegedly made by Robertson in connection with the sale of the insurance policy. He admitted that Robertson never said that "the premiums at $6,645 would be set or guaranteed for six years." Ferguson also conceded that he knew a twelve-year "vanish" was not guaranteed and that Robertson was not "trying to fraud [sic] me." (Def. Response, Ex. C at 124–25, 157, 195–96). Based on this testimony, Security Life removed the case to federal court for a second time on August 26, 1997.

Plaintiffs have filed a motion to remand. They claim that this successive attempt at removal is precluded by 28 U.S.C. § 1446(b). Plaintiffs argue that the statute creates an absolute prohibition against removal in diversity cases more than one year after commencement of the action in state court. Security Life maintains that the statute is merely procedural and therefore subject to equitable exceptions. One of those exceptions is equitable estoppel. Security Life contends that plaintiffs should be estopped from relying on the one-year limitation provision because they withheld information about the true nature of the representations allegedly made by Randy Robertson. This information was not uncovered until Weldon Ferguson was deposed more than three months after the removal deadline had passed. The parties further dispute whether Ferguson's testimony negates claims against Robertson

for fraud, negligence, and negligent misrepresentation. Finally, plaintiffs seek costs and attorney's fees incurred as a result of this most recent removal.

The Court held a hearing on January 28, 1998 and has reviewed the written submissions of the parties. The issues have been fully briefed and this matter is ripe for determination.

## II.

Section 1446(b) provides in relevant part:

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable, *except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than one year after commencement of the action.*

28 U.S.C. § 1446(b) (emphasis added). There is no question that this most recent attempt at removal comes more than one year after commencement of the action. *See* Tex.R.Civ.P. 22 (action is "commenced" when original petition is filed). Rather, the issue before the Court is whether the one-year limitation on removal in diversity cases is absolute. Plaintiffs contend that it is. Security Life argues that the statute is subject to equitable exceptions.

This precise issue has not been addressed by the Fifth Circuit or in any reported appellate decision. Some district courts have construed the statute as an absolute bar to the removal of any diversity case after one year. *Jenkins v. Sandoz Pharmaceuticals Corp.,* 965 F.Supp. 861, 869 (N.D.Miss.1997); *Russaw v. Voyager Life Insurance Co.,* 921 F.Supp. 723, 724–25 (N.D.Ala.1996); *Hedges v. Hedges Gauging Service, Inc.,* 837 F.Supp. 753, 755 (M.D.La.1993); *Cofer v. Horsehead Research and Development Co.,* 805 F.Supp. 541, 544 (E.D.Tenn.1991). Others courts have found the limitation to be procedural and therefore subject to equitable exceptions. *Kinabrew v. Emco–Wheaton,* 936 F.Supp.

351, 353 (M.D.La.1996); *Morrison v. National Benefit Life Insurance Co.*, 889 F.Supp. 945, 950–51 (S.D.Miss.1995); *Leidolf by Warshafsky v. Eli Lilly and Co.*, 728 F.Supp. 1383, 1388 (E.D.Wis.1990); *Greer v. Skilcraft*, 704 F.Supp. 1570, 1583 (N.D.Ala.1989). However, there does not appear to be a prevailing view. Even courts within the same district have disagreed on this issue. *Compare Kinabrew*, 936 F.Supp. at 353 *with Hedges*, 837 F.Supp. at 755.

Plaintiffs urge that the legislative history, official commentary, and plain language of the statute militate against any exceptions to the one-year limitation on removal. The Court will consider each of these factors in turn.

### A.

Section 1446(b) was amended by the Judicial Improvements and Access to Justice Act of 1988 to create a one-year limitation on removal in diversity cases. H.R. No. 100–889, 100th Cong., 2d Sess., *reprinted in* 1988 U.S.C.C.A.N. 5982. The Act itself was a consensus measure drafted with bipartisan support in both the House and Senate. *See* 134 Cong.Rec. S16284–01, 1988 WL 177968 (Oct. 14, 1988) (remarks of Senator Grassley). Not surprisingly, the discussion of this amendment was relatively abbreviated:

Subsection (b)(2) amends 28 U.S.C. § 1446(b) to establish a one-year limit on removal based on diversity jurisdiction as a means of reducing the opportunity for removal after substantial progress has been made in state court. The result is a modest curtailment in access to diversity jurisdiction. The amendment addresses problems that arise from a change of parties as an action progresses toward trial in state court. The elimination of parties may create for the first time a party alignment that supports diversity jurisdiction. Under section 1446(b), removal is possible whenever this event occurs, so long as the change of parties was voluntary as to the plaintiff. Settlement with a diversity-de-

stroying defendant on the eve of trial, for example, may permit the remaining defendants to remove. Removal late in the proceedings may result in substantial delay and disruption.

H.R. No. 889–100 at 72, 1988 U.S.C.C.A.N. at 6032–33. The amendment to section 1446(b) is consistent with the general purpose of the Act—to reduce the number of cases in federal court by restricting diversity jurisdiction.[4] *See Cofer*, 805 F.Supp. at 543.

However, this begs the question of how much of a restriction was intended. Congress wanted to *reduce* the opportunity for removal, not eliminate it entirely. The benign realignment of parties due to settlement or dismissal does not give rise to any equitable considerations that might outweigh the judicial system's interest in avoiding "delay and disruption." It is not clear that Congress intended to allow these administrative concerns to override the right to a federal forum when a potential fraud has been perpetuated on the court.

The official commentary to the Act does note that Congress anticipated and accepted that the one-year limitation would "invite tactical chicanery" by giving plaintiffs a significant amount of control over the choice of forum. DAVID D. SEIGEL, COMMENTARY ON 1988 REVISION OF SECTION 1446, *reprinted at* 28 U.S.C. § 1446 (commentary at 316). However, the commentary also points out that defendants can still remove if they can establish fraudulent joinder. *Id.* at 317. Unfortunately, there is no mention of whether fraudulent joinder is an exception to the one-year deadline. The official commentary does not help the Court decipher the true intent of this provision.

Nor is the language of the statute instructive in this regard. Several courts have relied on the plain language of the statute to justify an absolute bar on the removal of diversity cases after one year. *See, e.g., Jenkins*, 965 F.Supp. at 869; *Royer*, 741 F.Supp. at 1249; *Martine v. National Tea Co.*, 841 F.Supp. 1421, 1422 (M.D.La.1993);

---

**4.** The Act also raised the minimum jurisdictional amount in diversity cases from $10,000 to $50,-000. H.R. No. 889–100 at 44–45, 1988 U.S.C.C.A.N. at 6005. The amount in controver-

sy has since been raised to $75,000. Federal Courts Improvement Act of 1996, P.L. No. 104–317 § 205(a), *codified at* 28 U.S.C. § 1332(a) & (b).

*Cofer,* 805 F.Supp. at 544. However, the Court is not persuaded by these authorities. Many statutes of limitation appear to be absolute on their face yet are subject to equitable tolling, waiver, and estoppel. *See, e.g., Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393–94, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (Title VII); *Smith v. City of Chicago Heights,* 951 F.2d 834, 839 (7th Cir.1992) (42 U.S.C. §§ 1981 & 1983). *See generally Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 97, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990) (statutes of limitation are presumptively subject to equitable exceptions).[5]

In sum, none of these factors clearly establish whether the one-year limitation contained in section 1446(b) is an absolute bar to removal. The Court therefore must look beyond the statute to the nature of right created thereby.

### B.

Security Life argues that this limitation provision is procedural in nature and should be subject to equitable exceptions. Although the Fifth Circuit has not addressed this precise issue, a similar question was presented in *Barnes v. Westinghouse Electric Corp.,* 962 F.2d 513 (5th Cir.), *cert. denied,* 506 U.S. 999, 113 S.Ct. 600, 121 L.Ed.2d 536 (1992). Mark Barnes was seriously injured when he drilled into a high-voltage bus duct manufactured by Westinghouse. He sued the company and others in state court. Westinghouse removed the case to federal court *four years* later. The basis for removal was diversity of citizenship. Barnes timely filed a motion to remand but did not rely on the one-year limitation contained in the statute. His motion was denied. Approximately twenty

months later, Barnes filed a motion for rehearing. He argued for the first time that a case cannot be removed to federal court on the basis of diversity more than one year after commencement of the action. The motion for rehearing was denied and Barnes appealed.

The Fifth Circuit held that the limitation provision of section 1446(b) was procedural rather than jurisdictional. The court wrote:

> We have noted that the word "procedural" in section 1447(c) refers to "any defect that does not go to the question of whether the case originally could have been brought in federal district court ..." (Citations omitted). This distinction between removal jurisdiction and subject matter jurisdiction is applicable to section 1446(b), which speaks of the removal of cases not more than one year after the commencement of the action. We previously have noted that "[t]he time limitation for removal is not jurisdictional; it is merely 'modal and formal and may be waived.'" (Citations omitted). Because Barnes did not move for rehearing on his motion to remand based on a procedural defect until approximately twenty months after Westinghouse's removal, *we find that he waived his opportunity to call this procedural defect to the district court's attention.*

*Id.* at 516, *citing Baris v. Sulpicio Lines, Inc.,* 932 F.2d 1540, 1544 (5th Cir.), *cert. denied,* 502 U.S. 963, 112 S.Ct. 430, 116 L.Ed.2d 449 (1991) and *In re Shell Oil Co.,* 932 F.2d 1518, 1522–23 (5th Cir.1991), *cert. denied,* 502 U.S. 1049, 112 S.Ct. 914, 116 L.Ed.2d 814 (1992) (emphasis added).

---

5. The resolution of this issue may depend on whether the one-year limitation provision operates as a statute of limitation or a statute of repose. Although the terms are often used interchangeably, the distinction is important. A statute of limitation is generally subject to equitable exceptions whereas a statute of repose is not. Unfortunately, section 1446(b) has characteristics of both. On the one hand, the time period runs from an arbitrary date rather than from the time the right of removal is discovered. This is more akin to a statute of repose. *See Wayne v. Tennessee Valley Authority,* 730 F.2d 392, 401 (5th Cir.1984), *cert. denied,* 469 U.S. 1159, 105

S.Ct. 908, 83 L.Ed.2d 922 (1985). On the other hand, statutes of repose typically involve lengthy time periods in which suit must be brought. *Id.; Carroll v. Volkswagen of America, Inc.,* 789 F.Supp. 217, 220 n. 4 (S.D.Miss.1991); *see also Goad v. Celotex Corp.,* 831 F.2d 508, 511 (4th Cir.1987) (purpose of statutes of repose is to "relieve potential defendants from anxiety over liability for acts committed long ago"), *cert. denied,* 487 U.S. 1218, 108 S.Ct. 2871, 101 L.Ed.2d 906 (1988). A time limitation of one year suggests that the provision is more like a statute of limitation.

Plaintiffs argue that *Barnes* is not applicable because they did not waive their right to seek a remand. At least one other court in this circuit has relied on a similar theory in refusing to extend *Barnes* to other equitable defenses. *Jenkins,* 965 F.Supp. at 869. However, this Court is unaware of any authority that allows a statute to be subject to one type of equitable exception but not another. Moreover, the Fifth Circuit has clearly referred to removal outside the one-year limitation period as a "procedural defect." *Barnes,* 962 F.2d at 516. That holding is binding on this Court. *See Continental Airlines, Inc. v. American Airlines, Inc.,* 824 F.Supp. 689, 710 (S.D.Tex.1993). Accordingly, the Court finds that the one-year limitation on removal contained in section 1446(b) is procedural and subject to equitable exceptions.

### III.

Equity, however, is a two-way street. Security Life must demonstrate that its own conduct conformed to equitable principles. *See Jinks v. Mays,* 464 F.2d 1223, 1227 (5th Cir.1972). One such principle is that "equity aids the vigilant and not those who slumber on their rights." *National Assoc. of Government Employees v. City Public Service Board of San Antonio, Texas,* 40 F.3d 698, 708 (5th Cir.1994).

The Court is not convinced that Security Life was entirely vigilant. Fraudulent joinder has been an issue in this case from the beginning. Security Life should have known that under normal circumstances it had only one year to seek removal on that basis. Yet Weldon Ferguson was not deposed until *sixteen months* after the lawsuit was commenced. Security Life maintains that it did not take the deposition earlier because it was focusing on class discovery. This explains the delay, but does not justify it. Ferguson's testimony was crucial to the issue of fraudulent joinder. Security Life should have pursued the facts more diligently if it wanted to be in federal court. The insurance company also contends that it assumed the allegations contained in the petition were truthful and was "shocked" when Ferguson testified differently at his deposition. This hardly justifies the delay in conducting merits discovery. Moreover, Ferguson revealed in his interrogatory answers that Robertson told him the premiums would vanish in "roughly seven years." (Def. Response, Ex. C at 8). This should have been an early indication that there was more to the story than the allegations of the petition revealed.

Nevertheless, the Court will pretermit determination of this issue because Security Life has not proven that Robertson was fraudulently joined.

### IV.

The fraudulent joinder of an in-state defendant will not defeat federal diversity jurisdiction. *Burden v. General Dynamics Corp.,* 60 F.3d 213, 221 (5th Cir.1995); *Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 258 (5th Cir.1995). However, the burden of proving fraudulent joinder is a heavy one. *B, Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir.1981). The removing party must show: (1) outright fraud in the pleading of jurisdictional facts; or (2) no possibility that the plaintiff can establish a cause of action against the non-diverse defendant. *Burden,* 60 F.3d at 217; *B, Inc.,* 663 F.2d at 549. The standard of proof is clear and convincing evidence. *Grassi v. Ciba–Geigy, Ltd.,* 894 F.2d 181, 186 (5th Cir.1990). The Court must construe the pleadings and evidence in the light most favorable to the plaintiff and resolve all factual disputes in his favor. *Dodson v. Spiliada Maritime Corp.,* 951 F.2d 40, 42 (5th Cir.1992).

Plaintiffs have sued Randy Robertson for fraud, negligence, and negligent misrepresentation. All of these claims are premised on the same allegation—that Robertson represented that plaintiffs would not have to pay insurance premiums after seven years and plaintiffs relied on that representation in purchasing the policy. Security Life points to the deposition of Weldon Ferguson as evidence that this allegation is false. Ferguson testified that Robertson never said that "the premiums at $6,645 would be set or guaranteed for six years." He also conceded that Robertson was not "trying to fraud [sic] me." (Def. Response, Ex. C at 124–25, 195–96). However, Ferguson also testified that Rob-

ertson showed him illustrations of a seven-year payment plan and encouraged him to believe that the premiums would vanish in seven years. (Plf. Motion, Ex. 4 at 113). This explanation is consistent with the allegation made by plaintiffs in their petition.

Plaintiffs allege that Robertson "represent[ed] that the premiums for the policy would be $6,645 per year for the first six years, with a final premium payment of $690 for year seven, and no premium payment due beyond year seven, for the remaining years of the policy. It was represented ... that after seven (7) years the policy would be completely paid up and no more premiums would be due." THIRD AMENDED PETITION ¶ 7 (Def. Hearing Ex. 3). Security Life interprets this allegation to mean that Robertson "guaranteed" the premiums would vanish in seven years. However, plaintiffs do not use the term "guarantee" in their pleading. Rather, they state that Robertson made "representations" to that effect. The two terms are not necessarily synonymous.[6] The uncontroverted evidence shows that Robertson provided plaintiffs with an illustration of a seven-year payout after which time no further premiums would be due. That this "representation" was premised on a particular crediting rate does not alter the fact that such a representation was made.

Nor does Ferguson's admission that Robertson did not "fraud" him undermine this cause of action. There is no indication that Ferguson knew the legal elements of fraud. Moreover, Ferguson testified that he did not believe Robertson knew any more about the policy than he did. A fraud claim can also be based on a false statement made recklessly without knowledge of its truth or falsity. *See Sears, Roebuck & Co. v. Meadows,* 877 S.W.2d 281, 282 (Tex.1994).

Security Life further questions whether plaintiffs were justified in relying on Robertson's statements given the wealth of other information available to them. The evidence shows that Ferguson was a sophisticated businessman. He conducted his own re-search and investigation before purchasing the insurance policy. This included a review of other payment illustrations at different crediting rates. Indeed, Ferguson admitted that he knew "a 12 year vanish was not guaranteed." (Def. Response, Ex. C at 157). The Court acknowledges that this evidence casts doubt on the element of justifiable reliance. However, plaintiffs need not prove that the representations made by Robertson were the *sole* inducement for entering into the transaction. *Marburger v. Seminole Pipeline Co.,* 957 S.W.2d 82, 86 nn. 4 & 5 (Tex.App.—Houston [14th Dist.] 1997), *pet. filed* (November 21, 1997); *First State Bank of Bellaire v. Olde Colony House, Inc.,* 414 S.W.2d 221, 223 (Tex.Civ.App.—Waco 1967, writ ref'd n.r.e.). They need only show that the representations were a *material* factor in inducing them to purchase the policy. *First State Bank of Bellaire,* 414 S.W.2d at 223.

█ It is clear that Robertson's statements are subject to differing interpretations. At this juncture, the Court must accept the interpretation offered by plaintiffs. Security Life has failed to prove that there is "absolutely no possibility that plaintiff[s] will be able to establish a cause of action against [Robertson] ..." *Cavallini,* 44 F.3d at 259. Accordingly, their motion to remand is granted.

## V.

Plaintiffs also seek reasonable costs and attorney's fees incurred as a result of the removal. *See* 28 U.S.C. § 1447(c). The propriety of removal is central to the determination of whether to impose fees. *See Miranti v. Lee,* 3 F.3d 925, 928 (5th Cir.1993); *Flowerette v. Heartland Healthcare Center,* 903 F.Supp. 1042, 1046 (N.D.Tex.1995). The Court cannot conclude that Security Life acted improperly given the unsettled law in this area. The request for costs and attorney's fees is therefore denied.

---

6. Webster's Collegiate Dictionary defines "guarantee" as "to undertake to do or secure" or "to assert confidently." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 516 (10th ed.1993). "Representation" is defined as "a statement or account made to influence opinion or action" or "an incidental or collateral statement of fact on the faith of which a contract is entered into." *Id.* at 993.